IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| T.S.H., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 19-06059-CV-SJ-ODS |
| ) | |
| NORTHWEST MISSOURI STATE ) | |
| UNIVERSITY, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER AND OPINION DENYING DEFENDANTS' MOTION TO DISMISS

Pending is Defendants Northwest Missouri State University ("NWMSU"), Clarence Green, and Anthony Williams's Motion to Dismiss for Failure to State a Claim. Doc. #18. For the following reasons, Defendants' motion is denied.

I. **BACKGROUND**[1]

In June 2016, Plaintiffs T.S.H. and H.R.J., who were juveniles at the time, participated in a high school football camp held on NWMSU's campus. Doc. #12, ¶¶ 9-10. Plaintiffs paid a fee to NWMSU to participate in the camp. *Id.* ¶ 11. NWMSU's football coaching staff conducted the camp and provided instruction to participants. *Id.* ¶ 12. NWMSU furnished housing for participants in one of its dormitories. *Id.* ¶ 13.

At the same time the high school football camp was held, NWMSU hosted a high school cheerleading camp. *Id.* ¶ 14. NWMSU provided housing to the cheerleading camp participants in another dormitory. *Id.* ¶ 15. On June 19, 2016, a twenty-five-year-old female cheerleading coach ("complainant"), who was not an NWMSU employee or student, reported an incident that occurred the previous evening to NWMSU's residence assistants. *Id.* ¶¶ 16-17. Because her dormitory room did not have window coverings, the complainant changed her clothes near the wall between the windows where she thought no one could see her. *Id.* ¶¶ 19-20. While undressing, the complainant saw

---

[1] Because the Court may only consider the pleadings, the background information is pulled from Plaintiffs' Amended Complaint unless otherwise noted. Doc. #12.

several individuals looking at her from windows in another dormitory. *Id.* ¶¶ 21-23. She thought she saw a phone, but it is unclear if she saw anyone take a photo. *Id.* ¶ 24.

The NWMSU residence assistants provided the information to Defendant Anthony Williams, an NWMSU police officer, who, in turn, gave the information to Defendant Clarence Green, NWMSU police chief. *Id.* ¶¶ 5, 29-30. Williams met with the complainant, who said she did not want to prosecute. *Id.* ¶ 31. Williams filled out an Offense Report, indicating the incident was a "juvenile offense" and a "possible Title IX incident." *Id.* ¶¶ 35-36. Green and Williams began an investigation into the incident. *Id.* ¶ 38. Williams theorized the alleged offenders occupied two possible dormitory rooms, and he and/or Green obtained the names of the seven juveniles assigned to the rooms. *Id.* ¶¶ 43, 44.

According to Plaintiffs, Williams directed the juveniles' high school football coach to gather the players in one room and question them until someone confessed to photographing the complainant. *Id.* ¶¶ 44-45, 52-53. The coach assembled the players, including Plaintiffs, in one room and told them that they were being investigated by NWMSU police for the commission of an alleged crime. *Id.* ¶¶ 54-56. Plaintiffs and the other juveniles were asked to reveal photographs stored on their cell phones; they complied. *Id.* ¶¶ 57-58. The juveniles were questioned for hours, and were told if someone confessed, the teammates could remain at the camp. *Id.* ¶¶ 56, 59, 61. No one confessed, and the juveniles were expelled from the camp. *Id.* ¶ 63. In the Offense Report, Williams indicated that, based on the investigation, no one was facing criminal charges. *Id.* ¶ 64. The Offense Report listed the juveniles' names and was made publicly available. *Id.* ¶ 65.

In March 2019, Plaintiffs T.S.H. and M.J., as next friend of minor H.R.J., filed a lawsuit in the Circuit Court of Nodaway County against NWMSU, Green, and Williams. Doc. #1-1, at 3-13.[2] In May 2019, Defendants removed the matter to this Court. Doc. #1. Defendants moved to dismiss the complaint, and Plaintiffs amended their complaint. Docs. #3, 12. Plaintiffs allege claims against Green and Williams in their

---

[2] The Circuit Court granted M.J.'s motion to be appointed as next friend of H.R.J., who is a minor. Doc. #1-1, at 25. The Circuit Court also granted Plaintiffs' request to keep their identities confidential "until further action of this Court." *Id.* at 24.

individual capacities for violating 42 U.S.C. § 1983 (Count I), claims against Green and Williams for civil rights conspiracy (Count II), a claim against NWMSU for violating 42 U.S.C. §1983 (Count III), and a breach of contract claim against NWMSU (Count IV). Defendants move to dismiss all claims.

## II. STANDARDS
### A. Rule 12(b)(6)

Defendants move to dismiss Counts I, II, and IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing Plaintiffs fail to state a claim upon which relief may be granted. The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the… claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court "must accept as true…the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. A claim is facially plausible if it allows a reasonable inference that the defendant is liable for the alleged conduct. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

### B. Rule 12(b)(1)

Regarding Count III, Defendants argue NWMSU is entitled to immunity from suit. Doc. #19, at 10-11. Sovereign immunity is a jurisdictional, threshold matter properly addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014); *Whitmire v. Kan. City, Mo. Bd. of Police Comm'rs*, No. 16-1020-FJG, 2018 WL 4134696, at *2 (W.D. Mo. Aug. 29, 2018) (citations omitted). When considering a facial challenge to jurisdiction, the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). A complaint should not be dismissed for lack of subject matter jurisdiction "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

### III. DISCUSSION

#### A. Section 1983 Claim Against NWMSU

NWMSU argues Plaintiffs' section 1983 claim must be dismissed because it is immune from suit. "Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'" *Burk v. Beene*, 948 F.2d 489, 492-93 (8th Cir. 1991) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Although there are limits to the Eleventh Amendment's reach, Plaintiffs do not contend an exception applies. Instead, Plaintiffs argue Eleventh Amendment immunity is not available to NWMSU unless it is the arm or alter ego of the state. Doc. #25, at 21-22.

According to the Eighth Circuit, the Court must determine whether Plaintiffs' "suit is in reality a suit against the state." *Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860,

863 (8th Cir. 1994) (citations omitted).  "In making this determination[,] courts consider as a critical factor whether any judgment rendered against the entity would ultimately come out of state funds."  *Id.* (citing *Edelman,* 415 U.S. at 668).  Regarding whether a state university shares its state's Eleventh Amendment immunity, "the vast majority of courts have found that they do."  *Id.*  But "[t]he fact that an overwhelming majority of state universities possess eleventh amendment immunity, however, does not control the outcome of this appeal."  *Id.*

Whether a state university enjoys Eleventh Amendment immunity depends on "the basis of its own particular circumstances."  *Id.* (quoting *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985)).  To determine whether the immunity extends to a state university, this Court must "examine" the state university and "its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state."  *Greenwood*, 778 F.2d at 453.  The Court must "look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury."  *Id*. (citation omitted); *see also Sherman*, 16 F.3d at 863-64.

Defendants assert a facial challenge to jurisdiction.  Thus, the Court is limited to considering the face of Plaintiffs' Amended Complaint, and must accept their allegations as true, viewing the assertions in the light most favorable to Plaintiffs.  Defendants contend dismissal is appropriate because Plaintiffs' allegation that NWMSU "is a public university operated by the State of Missouri" demonstrates NWMSU is entitled to immunity.  Doc. #19, at 11; Doc. #29, at 10.  The Court disagrees.  Plaintiffs' allegation does not indicate NWMSU's "powers and characteristics," the degree of local autonomy and control it has, whether the funds to pay an award in this lawsuit would be derived from Missouri's treasury, and whether the lawsuit is, in actually, a suit against Missouri.

Defendants contend this Court has already decided NWMSU enjoys Eleventh Amendment immunity.  *See Setzer v. Nw. Mo. State Univ. Bd. of Regents*, No. 10-CV-495-DW, 2010 WL 11619245, at *1 (W.D. Mo. Sept. 10, 2010).  While the Court found NWMSU's Board of Regents enjoyed immunity, there is no indication the *Greenwood* factors were considered by the Court.  The Eighth Circuit has concluded the *Greenwood* factors must be examined to determine whether a state university enjoys immunity.

*Sherman*, 16 F.3d at 864. In fact, in *Sherman*, the Eighth Circuit remanded the matter because the district court failed to make "*factual* findings on the critical issues of the University's level of autonomy and sources of judgment funding." *Id.* (emphasis in original). Because the *Setzer* decision does not indicate whether the *Greenwood* factors were considered, the Court does not rely on that opinion.

Defendants' motion to dismiss Count III is denied.

### B. Section 1983 Claims Against Williams and Green

Defendants argue Plaintiffs' section 1983 claims against Williams and Green in their individual capacities must be dismissed because Plaintiffs fail to identify a clearly established statutory or constitutional right, do not identify specific conduct by each Defendant to demonstrate personal involvement in the alleged violation, and qualified immunity precludes the claim.

"Public officials are entitled to qualified immunity in suits against them in their individual capacity as long as their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bradford v. Huckabee*, 330 F.3d 1038, 1040 (8th Cir. 2003). The Court must first determine whether Plaintiffs allege sufficient facts demonstrating a violation of a clearly established statutory or constitutional right. *Id.* Plaintiffs allege their statutory and constitutional rights were violated as follows:

- "Plaintiffs were subjected to an unlawful search and seizure as prohibited by the Fourth Amendment in that their persons were unlawfully seized and their property and effects were unlawfully searched." Doc. #12, ¶ 66(a).

- Plaintiffs were "confined" in a room "for a period of hours" and were "not permitted to leave." *Id.* ¶¶ 53-54, 56, 59, 61.

- While "confined in the room," Plaintiffs were informed "they were being investigated by [NWMSU] police for the commission of an alleged crime," and they "were subjected to coercive interrogation tactics in an effort to obtain a confession." *Id.* ¶¶ 55, 59.

- While "confined," Plaintiffs were "asked to reveal information concerning photographs on their cell phones," and they "revealed information concerning photographs stored on their cell phones." *Id.* ¶¶ 57-58.

- "Plaintiffs were denied due process, as guaranteed by the Fourteenth Amendment, 18 U.S.C. § 5033,[3] and other applicable provisions of the U.S. Constitution and federal law, in that (a) they were effectively arrested and questioned without the benefit of notification to their parents and proper legal authorities; (b) their rights were not explained to them; (c) their parents were not notified of their confinement or their rights during that confinement; and (d) the proper legal authority was not notified…." *Id.* ¶¶ 66(b), 68-69.
- Plaintiffs' "right to privacy under the Fourteenth Amendment, 18 U.S.C. § 5038,[4] and other applicable provisions of the U.S. Constitution and federal law" were violated when "the particulars of the investigation and their identities [were] disclosed to unauthorized persons and included in a public record." *Id.* ¶¶ 65, 66(c).

Based on the foregoing allegations, the Court finds Plaintiffs' Amended Complaint sufficiently alleges their constitutional and statutory rights were violated.

The Court's analysis does not end there. Plaintiffs must also allege sufficient facts demonstrating the constitutional or statutory right that was violated was "clearly established," and "a reasonable person would have known" his/her conduct was unlawful in the situation. *See Brown v. Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) (citations omitted); *Bradford*, 330 F.3d at 1041 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Brown*, 574 F.3d at 499 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). There does not need to be a case finding the same conduct was unlawful. *Id.* (citations omitted).

---

[3] "Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights…and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody." 18 U.S.C. § 5033. "The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense." *Id.* "The juvenile shall be taken before a magistrate judge forthwith." *Id.* The juvenile shall not "be detained for longer than a reasonable period of time before being brought before a magistrate judge." *Id.*

[4] "Throughout and upon the completion of [a] juvenile delinquency proceeding," 18 U.S.C. § 5038, among other things, safeguards a juvenile's records and prohibits the public disclosure of a juvenile's name unless he/she is taken into custody and prosecuted as an adult. 18 U.S.C. § 5038.

At this stage, the Court is limited to Plaintiffs' Amended Complaint. Therein, Plaintiffs allege Williams, a law enforcement official, noted "juvenile offense" when the complaint was received. Doc. #12, ¶¶ 29-30, 35. When they began investigating the incident, Green, also a law enforcement official, and Williams allegedly knew Plaintiffs were juveniles and were not students or employees of NWMSU. *Id.* ¶¶ 40-41. Green and Williams allegedly knew the incident constituted a crime under Missouri and federal law. *Id.* ¶ 42. Green and Williams allegedly knew they could not lawfully confine and question juveniles about the incident without a warrant. *Id.* ¶¶ 46, 48. However, Green and Williams allegedly directed Plaintiffs' football coach to confine Plaintiffs (and their teammates), inform them that NWMSU was investigating them for the commission of an alleged crime, question them about the incident to gain evidence or a confession, and ask them to reveal information on their cell phones. *Id.* ¶¶ 49-62. When no one confessed, Williams or Green allegedly noted on the Offense Report that, based on the investigation, "no one was facing criminal charges." *Id.* ¶¶ 63-64. Although Green and Williams allegedly knew the juveniles were facing potential criminal charges, the Offense Report, which contained the juveniles' names, was made public. *Id.* ¶ 65.

Defendants suggest the Court conduct a "rigorous analysis" to determine whether a right is "clearly established," and argue Plaintiffs must "do more than point to a case" generally indicating a right is clearly established. Doc. #29, at 6-7; Doc. #19, at 14-15. Defendants are correct in one regard: the Court must undertake a "fact-intensive inquiry" to determine if the "right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008) (citations omitted). To conduct such an inquiry, there must be additional factual development. But, at the motion to dismiss stage, the Court is limited to the Amended Complaint.

When assuming Plaintiffs' factual allegations are true and drawing all reasonable inferences in their favor, the Court finds Plaintiffs have alleged sufficient facts indicating their constitutional and statutory rights were clearly established, and a reasonable person would have known his conduct violated those rights. The Court also finds Plaintiffs have alleged sufficient facts demonstrating Greene's and Williams's personal involvement in the conduct that allegedly violated Plaintiffs' rights. Finally, the Court

notes "[q]ualified immunity is an affirmative defense," and thus, can "be upheld in a motion to dismiss only when the immunity can be established on the face of the complaint." *Bradford*, 330 F.3d at 1041 (citing *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996)). Based on the face of the Amended Complaint, the Court finds qualified immunity has not been established.

Defendants' motion to dismiss Count I is denied.

### C. Civil Rights Conspiracy Claims Against Williams and Green

Defendants move to dismiss Plaintiffs' civil rights conspiracy claims against Williams and Green, arguing the claims fail because the underlying section 1983 claims fail. As set forth above, Plaintiffs' underlying section 1983 claims are not being dismissed; therefore, Defendants' first argument fails.

Alternatively, Defendants argue Plaintiffs failed to sufficiently allege a meeting of the minds. The elements of a section 1983 conspiracy claim are (1) "the defendant conspired with others to deprive [the plaintiff] of a constitutional right"; (2) "at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy"; and (3) "the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (citations omitted). Plaintiffs allege "Green and Williams acted in concert to conduct a search and seizure of Plaintiffs that violated Plaintiffs' rights under the United States Constitution and applicable federal law," and Green and Williams "discussed and had an agreement as to the manner in which Plaintiffs would be confined and interrogated…." Doc. #12, ¶¶ 80-81; *see also* Doc. #12, ¶¶ 38-62. The Court finds Plaintiffs sufficiently alleged a meeting of the minds.

Defendants' motion to dismiss Count II is denied.

### D. Breach of Contract Claim Against NWMSU

Defendants contend Plaintiffs' breach of contract claim against NWMSU should be dismissed because they failed to identify the contract at issue or the individuals who purportedly entered into the contract. Doc. #19, at 21-22. They also argue Plaintiffs failed to allege a state official, acting on behalf of the state, entered into the contract,

9

and in doing so, exercised his or her authority in a manner and form directed by the legislature. *Id.*

In Missouri, a plaintiff bringing a breach of contract claim must prove (1) the existence of a contract between the plaintiff and the defendant, (2) the right of one party and the obligation of the other party, (3) a breach of the contract, and (4) the plaintiff suffered damages as a result of the breach. *See Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010); *Holmes v. Kan. City Bd. of Police Comm'rs*, 364 S.W.3d 615, 622 (Mot. Ct. App. 2012) (citations omitted). Plaintiffs allege they had a contract with NWMSU, they paid a fee to NWMSU to participate in the high school football camp, NWMSU was required to allow Plaintiffs to participate in the camp, Plaintiffs followed the camp rules, NWMSU breached the contract by interfering with Plaintiffs' participation in the camp and prohibiting them from completing the camp, and Plaintiffs were injured. Doc. #12, ¶¶ 11, 63, 91-96. Construing these allegations in the light most favorable to Plaintiffs, they have sufficiently pleaded the elements of a breach of contract claim.

Defendants argue Plaintiff must also plead the NWMSU employee or officer who entered into the contract must have been acting on behalf of the state and exercising authority in a manner and form directed by the legislature. Doc. #19, at 20-21; Doc. #29, at 11. Defendants cite three cases in support. In two cases, the courts examined breach of contract claims asserted against a state officer, not a state university. *Aetna Ins. Co. v. O'Malley*, 124 S.W.2d 1164, 1166 (Mo. banc 1938); *Miller v. Mo. Dep't of Transp.*, 32 S.W.3d 170, 174 (Mo. Ct. App. 2000) (citation omitted). Defendants do not cite a case identifying a state university as a state officer.

Regarding Defendants' third cited case, which involved a state university, the Missouri Court of Appeals examined the breach of contract claim in the context of sovereign immunity. *Fowler v. Bd. of Regents of Centr. Mo. State Univ.*, 637 S.W.2d 352, 354 (Mo. Ct. App. 1982). Because the university could not contract away its sovereign immunity, the Court found the contract was void. *Id.* Since *Fowler* was decided, the Missouri courts have concluded sovereign immunity does not apply to breach of contract claims. *Kunzie v. Olivette*, 184 S.W.3d 570, 575 (Mo. banc 2006) (citation omitted); *Edoho v. Bd. of Curators of Lincoln Univ.*, 344 S.W.3d 794, 799 (Mo.

Ct. App. 2011) (citation omitted). Thus, it is unclear as to how *Fowler* applies to the facts alleged in the Amended Complaint. Based on the face of the Amended Complaint, and applying the liberal pleading standard, the Court finds Plaintiffs have sufficiently pleaded a claim of breach of contract.

Defendants' motion to dismiss Count IV is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied.

IT IS SO ORDERED.

DATE: September 23, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT